Yes, Your Honor. May it please the Court, my name is Gonzalo Martinez on behalf of Appellant Daniel and Katya Faerfers. To the Court's permission, I'd like to reserve five minutes for rebuttal. Sure. Your Honor, the issue in this case is whether the three terminating sanctions of maximum severity that the district court issued, which resulted in a $1 million judgment, is justified against our clients. And the answer to that is no. Even if this Court deems the Faerfers noncompliance as a willful violation, and it is not, the issue is not whether Mr. Faerfers' conduct was proper, but whether or not that conduct warranted the sanctions that the district court imposed. Now, those sanctions were not justified for three reasons. The first is that the trial court did not try lesser sanctions. They went from zero sanctions to terminating sanctions. Now, a court must... Is that true? I mean, you really sandbag the district court. You have a jury impaneled, and then you all of a sudden let them know, never mind, we actually have the stock, and he then imposes monetary sanctions, right? That's correct. And I would think then, okay, you're on a very short leash. You better not mess up. You better be candid and honest and forthcoming with where that stock is, who has it. Yes, sir. And then the next thing, let me go through the facts, and then you tell me why there wasn't adequate notice. You're now... No, you better be candid. You better not make a mistake, because we just had to excuse a jury panel, right? Yes, Your Honor. And you say, okay, we have this stock, and the judge tells you, get it here, give it to me. Correct. Right. And you've already, I guess, been monetarily sanctioned, right? For not telling the judge that you have the stock prior to impaneling the jury. Your Honor, if I could address those points. Under this circuit's law, the conduct must be related to the noncompliance at issue. Now, the noncompliance at issue here is... It's control and possession of the stock. We respect that it's failure. We submit that it's failure to comply with the district court's orders to transfer the stock. Now, the earlier sanction for trial delay arose before the court issued any orders relating to stock, and it's unrelated. And for this reason, it cannot count... I don't see how you say it's unrelated. It deals with the control and possession of stock. That's correct, Your Honor. And the district court did issue a monetary sanction to make the other party whole. That sanction does not appeal today. Moreover, the issue isn't necessarily whether or not our client did everything correct, but it also doesn't mean that our client did everything wrong. And terminating sanctions are not imposed for model behavior, but we submit the issue is not whether or not the conduct was proper, but whether or not the conduct warranted the sanctions. Wasn't the desire to get the stock back, wasn't that just the remedy? Yes, Your Honor. It went to remedy the issue. In other words, before the district court could order, make any orders with permanent kind of return of the stock back to creative... To CCI? To CCI. There had to be a determination that the – that there had been a breach of the earlier settlement agreement. Isn't that right? That's correct, Your Honor. There hadn't been any determination as to which party... I don't quite understand why there was even a need to continue the trial. Just, you know, I read all of that, and I couldn't figure out what's going on. Your Honor, I believe the reason trial counsel gave for requesting continuance is whether or not CCI, by transferring that stock, had waived any rights to it. Again, the issue before this court isn't whether or not... It went to remedy, because you still had to – there had to be a determination about breach. No, that's correct, Your Honor. And to this day, the issue of which party properly owns the stock has not been decided. In Germany, our latest information indicates that the court there is still determining the parties' respective rights to the stock. So why – let me ask you this. Why wasn't there a willful – so eventually, the judge does issue an order about turning that stock over to a third party. That's correct. All right. So that never happened. No, Your Honor, that did not. So why wasn't there a willful breach of that order? Your Honor, again, even if the district court's orders were clear, and we submit that they were not, they were – this wasn't a case, for example, where there was discovery abuse, where you have one single court issuing very – where you have one court issuing orders here, where you have the situation where you have the two courts of two different countries issuing orders simultaneously at the request of opposing counsel. Now, what this did is it created a situation where Mr. Fairfax did not know which orders to follow at which point. His own German counsel told him that it would be impossible to comply with both orders and that he should go to the U.S. court and seek clarification. At some point, was it after July 6th that it was all resolved that he could have transferred the stock to the neutral party? Yes, Your Honor. I believe that – He wouldn't have violated any – he wouldn't have violated the German order. That's correct, Your Honor. But instead he chose to appeal the German order to the German appellate court. That's correct. That's correct, Your Honor. But there was no impediment, in other words. He wouldn't have been violating the German court injunction. He would have been complying with the district court's injunction here. Stock would have been placed in a neutral – with a neutral third party. He didn't do that, right? Right. And he made a conscious decision not to do that. Your Honor, the – Though it looks like there was – Your Honor, the answer – It looks like the finding that there was a willfulness is pretty well, you know, it would be hard to overturn that. Again, Your Honor, even if this Court agrees that the conduct was willful, and we submit that it was not willfulness. You submit it was not because he had a right to appeal. Is that right? That's right. There was a right to appeal. He acted under advice of German counsel. He sought clarification from the U.S. court, and none was given. Moreover, willfulness is not the standard by which terminating sanctions are imposed. There are a number of factors. The most important, which are lesser – the availability or the fact that the trial court tries lesser sanctions and that there was prejudice to the other side. Now, lesser sanctions were not imposed here because the sanction on trial delay was not related to the failure to comply with a court order. There was no court order in place when that sanction was entered. Moreover, prejudice is very important here, and under the circuit's cases, it's a key factor and a decisive factor. Again, the conduct here is unlike a discovery case. It does not – the failure to transfer the stock did not interfere with the other side's preparation for trial. In fact, CCI asked for a trial date before that stock was even transferred. Moreover, at the time the terminating sanctions were entered, that stock was already in the German neutral's hands, so there was no interference with the rightful decision. Moreover, Your Honor, moving on to the third sanction, even if this Court believes that the conduct was willful, even if it believes the terminating sanctions were appropriate, the district court had no authority to exclude Mr. Fairfax from the damages phase. The district court was simply incorrect about the effect of default after terminating sanctions. Now, what a default does is it establishes liability, but it does not establish damages. And here, the district court did not allow Mr. Fairfax to even present any legal argument or evidence in mitigation of damages. There was nothing. He was subjected to open-ended liability and saddled with a half-million-dollar verdict without an adversary there. Now, CCI cites no authority allowing the district court to exclude Mr. Fairfax or that somehow it follows as a consequence of striking the answer to the counterclaim. And moreover, I would call this Court's attention to the cases of Adriana International and Henry v. Snyder's, where the defaulting parties were allowed to appear at the damages phase after their answer to a cross-complaint or a counterclaim was struck. Your Honor, sanctions issued must be just, and they must not be merely for punishment. And moreover, the reversal of any of the terminating sanctions would require reversal or reduction of the contractual attorney's fees. And with that, unless the panel has any questions? Roberts. I'd like to reserve your time and let's hear from the other side. Deepenbrock. Good morning. May it please the Court. I'm Eileen Deepenbrock, representing Caviar Creator. With me is my partner, Chris McCandless. I think that the Court has zeroed in on the most crucial aspect of this case, which is that dismissal is warranted by a deliberate and callous disregard of court's orders. That's well recognized. Willfulness has to be shown to have been found in clear error to overturn that, and that just does not exist here. Well, that's the only one factor, willfulness. You have to go on and ask whether or not, you know, a terminating sanction of dismissal is, you know, is the only one. Absolutely. There needs to be very good reason to do that. And so we have this factor test. Absolutely, Your Honor. And in National Hockey League, the U.S. Supreme Court recognized the very important need to have the deterrent effect of the ultimate sanction of dismissal available to the district court when there has been a complete disregard of its orders. Let's just assume that there was willfulness. Yes, Your Honor. I'm not even sure that there's willfulness, but Judge Hugg brought up a good point. In Germany, he did have the right to appeal. And under German law, he was still required to comply with the order for depositing the shares pending the appeal, and he did not do so. And that was presented to Judge England here in the United States. And we also shouldn't step away from Judge England's findings that this was the most egregious conduct he had ever seen in his years on the bench, and that he did not believe that the plaintiffs had any intention of complying with his order. He had fundamental and profound problems with their lack of candor and honesty, and he stated that over and over again. Now, a couple of the points that have been brought up on this appeal and argued this morning was that Judge England's orders weren't clear. That's not true. Well, okay, when you showed up for trial, the order to turn over the stock was not in place, correct? It was in place the day, the next day. But at trial, when all this occurred, there was no order to turn over. On the day of trial, that is correct, because we were litigating the rightful ownership of the stock, which was in the possession- Was part of the whole alleged cross-complaint and cross-claim about who violated the prior settlement agreement. That's correct, Your Honor. And that's what the trial was all about. That's correct, Your Honor. Okay. Okay. So, then comes the order to turn over the, put the stock in a neutral- Correct. Because they had been wrongfully taken by the appellant six months earlier, and not disclosed until the first day of trial, and then they were in jeopardy. So, then you got some sanctions for the delay in the trial that was caused, that they asked for the continuance and whatnot. Correct. Monetary sanctions- You got sanctions for that, and you were compensated for that. Monetary sanctions were issued because of that first disruption and interference with the judicial process. And it was a clear warning that the Court wasn't going to tolerate anything more. So, then, if you assume willfulness and you get to the discretionary part of the judge's decision to impose terminating sanction, you look at the factors that were involved. Counsel, I think, probably hit the two that are critical here, which was, was there prejudice, and the other one, which was- Lesser. Lesser sanctions. Lesser sanctions. Okay. And if I'm- You can take them any way you want, but tell me why you suffered prejudice as a result of his not turning over the stock. The prejudice was the fact that the stock was at grave risk from the time that it was disclosed until they finally were in the hands of a neutral party. And during- So, that affected grave risk? They were at risk because they were being- Let me back up, if I may, Your Honor. The district court's order was that the stock was to be protected. The district court's order was designed to rectify the situation of the stock being wrongfully taken and being placed in the hands of a party who was instructed not to sell, encumber, hypothecate, do anything with them, protect those shares, until the district court could rule on entitlement, ultimate entitlement to them. And during the six months that followed- Can I ask you, how much was that stock worth? There's conflicting evidence about that. Well, what was the highest price? Several million total, given that volume. The district court could have, if they had sold that stock, do you think the district court could have ordered, you know, compensation with respect to the value of that stock at the highest value possible? That was going on in Germany. And what, in fact, did happen, that the range of the stock ranged in value from, you know, really pennies per share to thousands of dollars per share. And there was nearly 450,000 shares at issue. And during the six months, the evidence came out that the plaintiff had misrepresented to the court where those shares were. He transferred them. He pledged them to a third party. And, in fact, they were depleted. So tell me, though, tell us, though, how you were prejudiced in your either defending against the cross-claim on the merits, I mean, on the complaint on the merits, or in the remedy? Well, I'm talking about establish a violation. I mean, breach. The issue How were you prejudiced? Caviar Creators' ability to present its claim for breach was affected first because there was a new issue that was thrown in at the last minute, which is whether or not Presumably, if he hadn't dismissed it, you would have gotten another trial date and you would have moved on to trial. That's correct. And that had to be My question then goes to that. How were you prejudiced in either defending against the complaint on the merits or in prosecuting your cross-claim on the merits? With respect to defending and prosecuting the merits, I would acknowledge no prejudice there. But that is absolutely not the end of the inquiry because the prejudice had to go with the efficacy of a remedy that the District Court could order if Caviar Creator prevailed. And that was a very important issue. And it was only after Caviar Creator was forced to go to Germany and expend money and attempt to protect its rights there that it was able to do anything. And it shouldn't have had to go through that process. Moreover, we also need to remember the guidance from the U.S. of that type of sanction when you have such a serious disregard of the court's orders. Now, may I address the lesser sanctions? Yes. Tell me about why the where does it reflect that the District Court thought about and considered and said, oh, these lesser sanctions just aren't going to do it? Okay. Where is that reflected in the record? There are numerous places, Your Honor, where that's reflected in the record. First of all, we don't want to ignore the monetary sanctions that had been issued and the argument has been made that that was for a different situation. We don't agree that that can be divorced because it did have to do with the fundamental issue about the location protection of the stock. No, that had to do with the fundamental issue of delaying the trial. Which was caused, Your Honor, because the stock had been taken. And I do not. I apologize. Well, yeah, it involves the shares. But what that sanction was for was delaying the trial. That sanction was for delaying the trial, which was an interference with the judicial process. And we, moving from there, the Malone case recognized that lesser sanctions include warnings and providing the plaintiff or the person accused of violating the order with multiple chances to comply. Where was, at what time was the party warned that if you don't comply, you're going to do this? We're going to dismiss your action. Your Honor, the warnings came as follows. First, at the May 10th hearing, where the monetary sanctions were issued, the court made clear that one of the sanctions available to it for ongoing and repeated misconduct would be terminating sanctions. At the May 18, 2007 hearing, or status conference, the court gave the plaintiff's appellant a second chance to comply with its order of putting the hands in the shares of a neutral party. The first order had been May 10th. The second opportunity to comply was on May 18, 2007. On June 17, 2007, at the status conference, the court gave the plaintiff's appellant a third chance to comply by saying that, recognizing that there were procedures underway in Germany, and telling them that they should comply with that German process. Let the German procedure go forward. At that same hearing, on June 17, the court expressed serious concern with the plaintiff's credibility, and saying they were playing games with the court, muddying the water, and he didn't think that the plaintiff actually ever attempted to comply, or intended to comply. In that scenario, though, do we have a problem? Do we have a clear and unambiguous order? Here's what you're supposed to do with the stock. Yes. Place it in the hands of a neutral party, and at the terminating sanctions motion, Your Honor, this is critically important. Judge... Before you make that comment, the order that is on the record now is give it to Mr. Trotter, and everybody agrees Mr. Trotter isn't going to have it. So what is the clear order from the district court? Place it in the hands of a neutral party. And that had been the discussion on May 18. When you say it was in the discussion, was that... Did Judge England say that on the record, ordering you to give it to a third party? Judge England said the intent of the order is to place it in the hands of a neutral party. We have a particular individual now identified by caviar creator. I'm deliberately nitpicking what you said, the intent. Was there a specific order for Judge England to say, place the stock in a neutral third party? The specific language, express language of the order on May 18 was place it in the hands of Dr. Trotter. Right. And everyone agreed that that's not going to happen. Not later, they did on May 18. But the important thing, Your Honor, too, is that on May 18, the party stipulated to a procedure that would place the stock in the hands of a neutral in Germany. The only one then identified was Dr. Trotter. And then that neutral in Germany would comply with any further orders from the German court. The party stipulated to that. And if I may, Your Honor, there were three times during the hearing on the terminating sanctions when Judge England expressly said to Appellant's counsel, the purpose of my order was to place the stock in the hands of a neutral. Was that not perfectly clear? And three times Appellant's counsel said, yes, Your Honor, we understood it. That was perfectly clear. But his order was in a party who no longer can hold the stock. So I'm still concerned. Where is the order from Judge England saying, place the stock here? With the exception of the order on May 18 identifying a particular name. That's the one order. That is the one. The rest were just were dealing with intent and the spirit of that order. The purpose of that order to put it in the hands of a neutral, yes. Is that a problem? No. Dealing with terminating sanctions? You want to have a clear, unambiguous order that was willfully violated? I don't think so, Your Honor, especially when Appellant's counsel agreed to that point during the terminating sanctions. And everybody clearly understood that the name of the neutral was the least important point. What was the most important point was a neutral person. It's now in the hands of a neutral person. Is it not? It now is. Not in use? That is correct. That is correct, Your Honor. So when was that then? That was done in November 2007. Six months after the order and only after a seizure was implemented by Caviar Crater, never by Mr. Fairfax voluntarily. Was that done prior to the order determining the complaint and answer? Several days before, yes, Your Honor. I see I'm getting low on time here. I wanted to briefly address, if I may, the issue about the exclusion from the prove-up hearing. What's the authority for that? It's an extension. We don't agree that there are three orders, first of all. We think it's an extension. Well, I mean, let's just assume that it's not a, you know, maybe it's not a sanction or whatever, but what's the basis? What's the authority for excluding somebody on a prove-up in a default proceeding on the issue of damages? All a default does is admit liability. Understood, Your Honor. And we submit that it was because it was part of the very, very egregious part and parcel of the violations.  We don't disagree with that. So it was a sanction. Correct, Your Honor. We don't disagree with that. And we think that it was appropriate under the circumstances. Okay. So if you have any other questions, I'm prepared to submit. Thank you. Thank you. Your Honors, if I may briefly address some points. Now, this Court is zeroing in that there was, in fact, no clear order. And I have the text of Judge England's order regarding Mr. – transferring Mr. Trotar on May 18th. And what he says is, so my order then, if you follow it, is that it be transferred forthwith via electronic means, however, to Trotar – to Dr. Trotar with supplemental instruction – instructions to Trotar from this Court that in the event a German court orders that these shares be transferred to a further escrow account, that he comply with those orders. Now, counsel argues that Fairfax Trial Counsel stipulated the transfer to Trotar. However, that is not the case. Excerpts of record, page 57, indicates that what Mr. – what Fairfax Trial Counsel did was stipulated that Trotar could receive instructions to transfer to the German court if the German court so ordered. And what he didn't do, however, was agree to transfer to Dr. Trotar. And the court accepted that stipulation. So, again, there was no clear order, transfer to Trotar – I'm sorry, there was no clear order that this should be in the hands of a neutral. And when Mr. Fairfax asked for clarification, the district court did not act on that request. And moreover, at a certain point, it basically said, we're just going to let the – we're going to let the Germany machine roll through and determine this issue. Now, Your Honors, for terminating sanctions, an order where everyone understood what was supposed to be done cannot be enough. Again, I would like to impress upon this court the fact that we have two orders here from two different courts in two different countries. This isn't an ordinary discovery dispute where there is one court telling you what to do. Here you have two courts telling you what to do. Moreover, Your Honors, willfulness is not enough for terminating sanctions. National Hockey League and deterrence – we agree that terminating sanctions are necessary for deterrence, but that is not the issue here. The issue here is whether or not the conduct of Mr. Fairfax and his attempt to comply warranted the sanctions that were imposed by the trial court. Moreover, as to whether or not – CCI cannot show that it suffered any prejudice. Now, the risk of – there was no risk of prejudice in Germany because eventually what happened is that the account was frozen. There were no transfers that were permitted at all. So the stock was secured. It was protected. Now, as to the German actions, they were – again, they were started before there was even any noncompliance in the U.S. Moreover, additional time to comply cannot be a lesser sanction where it is unclear what it is that a party should do. When you have conflicting orders, additional time to comply doesn't really do anything. Moreover, Your Honors, the final point, CCI in its brief agree that the earlier trial delay sanctions were not a lesser sanction for terminating sanctions analysis, and that's at reply brief, page 26, note 5. Your Honors, we request that the court overturn terminating sanctions in full and overturn any attorney's fees awarded. Thank you. The matter is submitted at this time. Thank you very much. We appreciate your…
judges: Carney, Hug, Paez